**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Matthew G Voita,

          Plaintiff,

v.

City of Phoenix, et al.,

          Defendants.

No. CV-26-01528-PHX-DWL

**ORDER**

The Court previously screened *pro se* Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)[1] and dismissed it with leave to amend. Plaintiff has now filed a first amended complaint ("FAC") (Doc. 8), which the Court again screens. *Espinosa v. Stogner*, 2017 WL 6033412, *2 (D. Nev. 2017) ("Permitting a claim that has been dismissed upon screening (with leave to amend) to proceed after amendment without any examination of the sufficiency of the amendment would frustrate the statute's purpose of preventing unmeritorious claims from proceeding to discovery and trial.").

## BACKGROUND

The FAC alleges as follows. Plaintiff was a "Utility Mechanic / Senior Utility Operator" employed by the City of Phoenix ("the City") in the Water Services Department from December 19, 2022 through May 7, 2025. (Doc. 8 ¶ 15.)

On September 25, 2024, "during a recorded interview," Defendant Grace Bernal, a

---

[1]     Although section 1915 largely concerns prisoner litigation, section 1915(e) applies to all in forma pauperis proceedings. *Calhoun v. Stahl,* 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

Senior Human Resources Analyst for the City, "stated that Plaintiff's mental-health status[2] constituted 'red flags' disqualifying him from a promotional opportunity, and advised Plaintiff to omit references to his mental-health status in future interviews." (*Id.* ¶¶ 17, 27.) Plaintiff considered Bernal's statement to be "direct evidence of a 'regarded as' disability discrimination claim under the ADA," and therefore, in late September or early October 2024, Plaintiff filed a complaint with the City's Equal Opportunity Department ("EOD") as well as an external EEOC charge. (*Id.* ¶¶ 27-28.)

Meanwhile, "as early as September 2024," unspecified persons ("management") at the City had concerns about "Plaintiff's lawful audio-recording of his own conversations," which these persons "escalat[ed] to HR." (*Id.* ¶ 37.) The City "subsequently promulgated" a regulation prohibiting workplace recording. (*Id.*)

On October 7, 2024, Defendant Michael Nunez, a Senior Utility Operator at the City's Phoenix 23rd Avenue Wastewater Treatment Plaint and a Steward of AFSCME Local 2384, "stated to Plaintiff in a recorded conversation that City management had 'created a scenario' to isolate Plaintiff because of his refusal to participate in fraudulent 'filler work orders'—a scheme by which labor hours were billed against fictitious work tickets." (*Id.* ¶¶ 22, 29.)

On October 10, 2024, Plaintiff "disclosed audio recordings of the discriminatory and fraudulent admissions to City HR executives and union leadership." (*Id.* ¶ 30.)[3]

On October 12, 2024, Defendant Tracy Sallen, a Senior Human Resources Analyst employed by the City, and Defendant Leandro Garcia, the Deputy Water Services Director for the City, placed Plaintiff on an indefinite "at-home work assignment." (*Id.* ¶¶ 3, 21, 23.) "Internal supervisor instructions in Plaintiff's possession acknowledge that the 'at-home' status is used by the City as a precursor to termination." (*Id.* ¶ 34.) Sallen issued a

---

[2]   The FAC does not provide any details as to the nature of Plaintiff's "mental-health status."

[3]   The FAC does not specify whether the "City HR executives" included senior HR analysts Grace Bernal and Tracy Sallen, HR supervisor Margarita Valdez, and/or HR director Jason Perkiser and also does not specify whether "union leadership" included AFSCME Local 2384 Steward Michael Nunez.

memorandum outlining the parameters of the at-home work assignment and prohibiting Plaintiff from discussing "the circumstances giving rise to the allegations against you or the City's investigation with any of your peers/coworkers, potential witnesses, or anyone else involved in the investigation." (*Id.* ¶ 31.)[4] Plaintiff requested clarification about what the "circumstances" were that he was prohibited from discussing. (*Id.* ¶ 33.) Sallen "refused to identify them, stating in substance that she did not herself know what those circumstances were." (*Id.*)

On February 7, 2025, Garcia issued Plaintiff a written reprimand,[5] signed by Garcia as supervisor. (*Id.* ¶ 36.)

On February 11, 2025, nonparty EOD staff member Sandra Vizcarra issued a written determination stating that Plaintiff's EOD complaint failed to establish a prima facie case of discrimination. (*Id.* ¶ 28.) On an unknown date, Defendant Tateum Portales, an EOD supervisor, told Plaintiff he could not appeal the EOD determination, in violation of a City regulation permitting appeals, stating there was "nothing for [Plaintiff] to appeal because EOD did not accept [his] complaint." (*Id.* ¶ 35.)

On February 19, 2025, Plaintiff sent an email from his City email account to approximately 80 colleagues at the Water Services Department asking them not to sign a compliance acknowledgement form for the newly promulgated regulation banning workplace recordings. (*Id.* ¶ 38.) In response, the City revoked Plaintiff's computer and email access. (*Id.*)

On February 20, 2025, nonparty Frank Valancia sent an unspecified person an internal email stating that having Plaintiff under his supervision as an employee jeopardized his career. (*Id.* ¶ 36.)

On April 25, 2025, Plaintiff was interviewed by EEOC staff regarding the charge he filed the previous autumn. (*Id.* ¶ 4, 39.) Plaintiff provided the EEOC "with audio

---

[4] On October 16, 2024, Sallen issued a revised memorandum, reimposing the conditions of the October 12, 2024 memorandum and additionally barring Plaintiff from coming to non-public City premises, "thereby physically excluding Plaintiff from his place of employment" while maintaining him as a paid employee. (*Id.* ¶ 32.)

[5] The FAC does not specify the conduct addressed in the written reprimand.

evidence of Defendant Grace Bernal's discriminatory 'red flag' statements regarding Plaintiff's mental health status." (*Id.* ¶ 4.) The City received notice that "Plaintiff's charge had advanced to formal investigation." (*Id.*)

On April 28, 2025, the City issued Plaintiff a one-day unpaid suspension, which Plaintiff served on April 29, 2025. (*Id.* ¶¶ 5, 41.)[6]

On April 30, 2025, Defendant Robert Goldsby, a special agent "assigned to the Major Fraud Unit 2 of the Office of the Arizona Attorney General," "executed residential search warrant SW2025-002088 at Plaintiff's home, seized Plaintiff's electronic devices, and caused Plaintiff's arrest by Phoenix Police on charges arising under A.R.S. § 13-3553 [sexual exploitation of a minor] and A.R.S. § 13-1429(A) [possession of a child sex doll]." (*Id.* ¶¶ 24, 42-43.) Plaintiff alleges various defects with the warrant. (*Id.* ¶ 44.)

That same day, Bernal sent Plaintiff a letter acknowledging his arrest and warning that failure to report to work by May 6, 2025 would be deemed a resignation. (*Id.* ¶ 7.)

On May 6, 2025, Bernal sent Plaintiff a letter deeming Plaintiff's involuntary absence a resignation. (*Id.* ¶ 8.)

On May 12, 2025, Defendant Margarita Valdez, the Water Services Human Resources Supervisor for the City, forwarded confirmation of Plaintiff's termination to nonparty "Amy Tuita, Secretary III," indicating that Plaintiff "has been terminated." (*Id.* ¶¶ 18, 48.)

On May 13, 2025, Garcia ordered the removal of Plaintiff from City compliance training matrices, with the request stating that Plaintiff "no longer work[s] for the [City]." (*Id.* ¶ 48.)

On May 15, 2025, Plaintiff's father delivered a "written notice that Plaintiff was incarcerated, was not resigning, and intended to return to work" and requested withdrawal of the constructive resignation. (*Id.* ¶ 9.)

On May 23, 2025, Defendant Jason Perkiser, "the Interim Citywide Human

---

[6]    The FAC does not specify the conduct the City cited as grounds for the one-day suspension.

- 4 -

Resources Director for the City and the final policymaker for human-resources matters," and nonparty Water Services Director Troy Hayes jointly denied the withdrawal request. (*Id.* ¶¶ 9, 19, 50.)

**DISCUSSION**

I.    City of Phoenix Employees

The FAC names seven City of Phoenix employees as defendants: Bernal, Valdez, Perkiser, Portales, Sallen, Nunez, and Garcia (the "City Employees"). (*Id.* ¶¶ 17-23.) Each is alleged to have acted at all relevant times "under color of state law" and is sued "in both his [or her] individual and official capacities." (*Id.*)

As an initial matter, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (9th Cir. 1985) (cleaned up). Thus, the official-capacity claims against the City Employees are duplicative of the claims asserted in the FAC against the City and can be dismissed. *Vondra v. City of Billings*, 2023 WL 197029, *4 (D. Mont. 2023) (dismissing official capacity claims against individual defendants because they are "duplicative of their claims against the City").

Turning to the question of individual liability, Count One of the FAC alleges that all seven City Employees (and the City) engaged in First Amendment retaliation against Plaintiff, in violation of 42 U.S.C. § 1983, by taking various adverse employment actions against Plaintiff "in retaliation for that protected speech." (Doc. 8 ¶ 54.) Meanwhile, "that protected speech" is defined as consisting of (1) "Plaintiff's October 10, 2024 disclosure of recorded evidence of fraud, discrimination, and labor-rights violations"; and (2) "his April 25, 2025 federal EEOC interview." (*Id.* ¶ 53.)

"In evaluating a First Amendment retaliation claim, [courts use] a sequential five-

step series of questions.  Those questions are as follows: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech."  *Gibson v. Office of Atty. Gen., State of Cal.*, 561 F.3d 920, 925 (9th Cir. 2009) (cleaned up).

Turning to the third element, "[t]o sufficiently plead this element, Plaintiff must first allege that Defendants were aware of [his] protected speech."  *Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1150 (N.D. Cal. 2013).  The FAC fails to adequately allege that any of the City Employees was subjectively aware of either of the episodes of allegedly protected speech specified in ¶ 53 of the FAC.  As for the October 10, 2024 disclosure, the FAC alleges that Plaintiff made it to "City Human Resources and union leadership."  (*Id.* ¶¶ 3, 30.)  This allegation is insufficient because "City Human Resources and union leadership" is an amorphous and potentially large group of people.  The Court cannot infer from this allegation that any specific City Employee (let alone all seven City Employees) was a recipient of this particular disclosure.  Similarly, as for the April 25, 2025 federal EEOC interview, the FAC alleges that Plaintiff made the disclosure to "EEOC staff" (*id.* ¶¶ 4, 39), who in turn provided notice to "The City of Phoenix" or "the City" that Plaintiff's charge had advanced to a formal investigation (*id.* ¶¶ 4, 40).  Once again, this is insufficient to establish that any specific City Employee (let alone all seven City Employees) was a recipient of this particular disclosure.

With that said, a third disclosure, not mentioned in ¶ 53 of the FAC but incorporated by reference into Count Two by ¶ 56, was Plaintiff's filing of an internal EOD complaint sometime in late September or early October 2024.  (*Id.* ¶ 28.)  The FAC alleges that an EOD staff member, nonparty Vizcarra, "issued a written determination" that Plaintiff failed to establish a prima facie case of discrimination and Defendant Portales denied Plaintiff

the right to appeal the decision. (*Id.* ¶ 35.)  These facts are sufficient to raise an inference that Portales was aware of this disclosure, possibly as early as late September 2024 and at least before the allegedly retaliatory events in late April 2025.  In contrast, the FAC fails to allege that Bernal, Valdez, Perkiser, Sallen, Nunez, or Garcia was personally aware of these developments.  *See, e.g., Wilson v. Cnty. of Contra Costa*, 2015 WL 4880996, *3 (N.D. Cal. 2015) ("Plaintiff must show that the defendant was *aware* that he engaged in the expressive conduct when he or she took the adverse action. . . . [T]here is no allegation that either Defendant took [adverse] actions with knowledge that Plaintiff had engaged in protected speech.  Therefore, the allegations are insufficient to show that they acted with retaliatory intent.  Accordingly, the Court finds that Plaintiff has not stated a claim for First Amendment retaliation and that as a consequence, all of his First Amendment Claims are insufficiently pled.  Plaintiffs' First Amendment Claims are dismissed with leave to amend."); *Martinez v. Valdez*, 2018 WL 6016969, *7 (C.D. Cal. 2018) ("The Complaint does not allege that Jane Doe Four was present for or aware of any protected speech by Plaintiff . . . .  Thus, Plaintiff has not stated a First Amendment claim against this Defendant."); *Riley v. Vizcarra*, 2019 WL 6497884, *4 (S.D. Cal. 2019) ("The Complaint does not allege that Vizcarra was aware that Plaintiff filed a staff complaint, let alone that his subsequent actions were motivated by such knowledge."); *Hammler v. Alvarez*, 2019 WL 422575, *9 (S.D. Cal. 2019) ("The claim against Deis based on the RVR fails for the fundamental reason that there is no allegation that Deis ever knew that Plaintiff filed a grievance against him and Alvarez. Plaintiff simply asserts Deis issued the RVR in retaliation for exercising the right to file a grievance.  But nothing in the complaint suggests that Deis knew that Plaintiff had filed the grievance.  Without such an allegation, there cannot be a causal connection between the RVR and the grievance.  Because Plaintiff alleges no facts to show that Deis had any prior knowledge of this grievance, there are no facts to suggest that Deis issued the RVR in retaliation for the filing of a grievance.") (cleaned up).  Thus, Count One is dismissed as to all City Employees except Portales.

The next claim seemingly asserted against all seven City Employees is Count Two,

which is a claim for "Fourth Amendment Violations/*Franks v. Delaware* (42 U.S.C. § 1983)." (Doc. 8 at 9.) The gist of this claim is that Defendant Goldsby, a special agent who works for the Office of the Attorney General (*id.* ¶ 24), included various categories of false information in a search warrant "relating to allegations of child exploitation" that was used to search Plaintiff's property. (*Id.* ¶¶ 43-44, 57.) As for the "City Defendants," the FAC alleges that they "jointly engaged with Defendant Goldsby in unauthorized disclosure of Plaintiff's HR records to manufacture probable cause, sustaining liability under the joint-action doctrine of *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)." (*Id.* ¶ 58.)

Count Two fails to state a claim against the City Employees because it lumps them together without differentiation. *Dickenson v. Haga*, 2019 WL 416720, *3 (C.D. Cal. 2019) ("Plaintiff merely sets forth allegations as to actions taken by 'Defendants' as a collective group. Absent specific allegations identifying what actions each defendant took against Plaintiff and how such actions violated Plaintiff's rights, the Complaint fails to provide Defendants with fair notice of Plaintiff's claims or the grounds upon which they rest. As such, Plaintiff's claims against each individual defendant are subject to dismissal.") (citation omitted).

The next claim asserted against all seven City Employees is Count Four, which is a claim for conspiracy under color of law in violation of 42 U.S.C. § 1985(3). Section 1985(3), which is "also known as the Ku Klux Klan Act of 1871" and "was enacted to protect southern Black people from the violence of the vindictive Ku Klux Klan," is "split into two clauses": (1) the "support-or-advocacy clause," which applies only to voter suppression (and is clearly inapplicable here); and (2) the "equal protection clause." *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1067-72 (C.D. Cal. 2024). The equal protection clause of § 1985(3) "requires: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in their person or property or deprived of any right or privilege of a citizen of the United States." *Id.* at 1068-69. "A claim under

this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). The FAC is bereft of allegations showing a conspiracy between all seven of the City Defendants.

The next claim asserted against all seven City Employees is Count Eight, which is a state-law claim for intentional infliction of emotional distress ("IIED"). "The three required elements are: *first,* the conduct by the defendant must be 'extreme' and 'outrageous'; *second,* the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third,* severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Under Arizona law, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress," such that Arizona "[c]ourts have not hesitated to reject employment-related IIED claims under analogous circumstances." *Lancaster v. City of Phoenix*, 2026 WL 657068, *10 (D. Ariz. 2026) (citations omitted). The conduct alleged in the FAC "does not qualify as the sort of extremely rare, atrocious and utterly intolerable conduct that completely violates human dignity and strikes to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung," *id.* (cleaned up), which is what an IIED claim requires. Furthermore, there are no nonconclusory allegations establishing either intentionality or severe emotional distress. Thus, this claim fails.

The last claim asserted against all seven City Employees is Count Nine, which is a state-law claim for civil conspiracy and aiding and abetting tortious conduct. That claim fails because, as noted in relation to Count Four, there are insufficient allegations to support a conspiracy claim or aiding-and-abetting liability against these defendants.

Finally, in Count Three, the FAC alleges that four of the seven City Employees—Bernal, Valdez, Perkiser, and Portales—deprived Plaintiff of his constitutionally protected property interest in his job without notice and a meaningful pre-termination hearing, in

- 9 -

violation of the Fourteenth Amendment as enforced through § 1983. However, nothing in the FAC suggests that Valdez and Portales had anything to do with those denials—at most, Valdez is accused of forwarding a "termination confirmation" decision that had been made by someone else. (Doc. 8 ¶ 48.) In contrast, paragraphs 46 and 50 seem to allege that Bernal and Perkiser were personally involved in making or ratifying the challenged decisions.

For these reasons, all of the claims against the City Employees are dismissed except for Count One as to Portales and Count Three as to Bernal and Perkiser. Those claims are "sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). "[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that [a] defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

II.    Remaining Claims And Defendants

The remaining two defendants named in the FAC are the City of Phoenix and Goldsby. (Doc. 8 ¶¶ 16, 24.) Liberally construed, and without prejudice to those defendants' ability to file a motion to dismiss, the FAC's claims against those defendants are sufficient to survive screening, with the exception of the § 1985(3) conspiracy claim in Count Four and state-law claims in Counts Eight and Nine (which fail to state a claim for the reasons set forth in Part I above).

III.    Leave To Amend

Although the Court has now expended significant resources screening two complaints, it will, in an abundance of caution and in light of Plaintiff's *pro se* status, give him one final opportunity to amend. Leave to amend is granted to the extent Plaintiff wishes to attempt to cure the deficiencies that led to the dismissal of any of the claims being dismissed in this screening order.

IV.    Service Of Process And Plaintiff's Motion For "Litigation-Cost Relief"

Plaintiff is indigent and is entitled to have the Court "issue and serve all process" at

Plaintiff's request.  *See* 28 U.S.C. § 1915(d).  Plaintiff's motion for litigation-cost relief (Doc. 6) is granted to the extent that it requests service of process.  Plaintiff also requests electronic noticing (*id.* at 1), which is available to Plaintiff through the process set forth in the notice that issued on March 4, 2026.  (Doc. 4 at 1-2.)  Plaintiff's request for free transcripts (Doc. 6 at 1) is premature and is denied.  The Court does not require courtesy copies, so the request to be relieved from that requirement (*id.* at 2) is denied as moot.

Accordingly,

**IT IS ORDERED** that:

1. Counts Four, Eight, and Nine of the FAC are **dismissed**.

2. Defendants Valdez, Sallen, Nunez, and Garcia are **dismissed**.

3. As for Defendants Bernal and Perkiser, all claims are dismissed except for Count Three.

4. As for Defendant Portales, all claims are dismissed except for Count One.

5. Service of the FAC on Defendants City of Phoenix, Bernal, Perkiser, Portales, and Goldsby is ordered as follows:

    a. The Clerk of Court shall send Plaintiff a service packet for such Defendant(s) including the FAC (Doc. 8), this order, and both summons and request for waiver forms.

    b. If Plaintiff does not complete and return the service packet(s) to the Clerk of Court within 30 days of the date of filing of this Order (and does not personally obtain a waiver of service or complete service), the action may be dismissed.  Fed. R. Civ. P. 4(m).

    c. If Plaintiff completes and returns the service packet(s) to the Clerk of Court within 30 days of the date of filing of this Order, the U.S. Marshal shall send to each Defendant a request for waiver pursuant to Rule 4(d)(1).  If a Defendant does not waive service, the U.S. Marshal shall effectuate service.  The Court may impose expenses incurred in making service on such Defendant pursuant to Rule 4(d)(2).

- 11 -

> d.   A defendant who agrees to waive service of the summons and complaint must return the signed waiver forms to the **United States Marshal**, not the Plaintiff.

6.   Plaintiff's motion for litigation-cost relief (Doc. 6) is **granted in part and denied in part**.

7.   Plaintiff shall review the March 4, 2026 notice to self-represented litigant. Plaintiff may request electronic noticing using the form provided therein.

8.   Plaintiff may, within 14 days of the issuance of this order, file a Second Amended Complaint ("SAC").  Any changes shall be limited to attempting to cure the deficiencies identified in this order and Plaintiff shall, consistent with LRCiv 15.1, filed a redlined version of the SAC as an attachment, showing how it differs from the FAC.

Dated this 13th day of July, 2026.

_____
Dominic W. Lanza
United States District Judge